2011 ND 120

**In the Interest of L.T., a child**

**Jacob Rodenbiker, Petitioner and Appellee**

v.

**L.T., Child; H.T., Mother, Respondents**

**and**

**B.T., Father, Respondent and Appellant.**

**No. 20100329.**

Supreme Court of North Dakota.

June 21, 2011.

Jacob T. Rodenbiker, Assistant State's Attorney, Courthouse, Bismarck, N.D., for petitioner and appellee.

Bradley D. Peterson (argued) and Meredith L. Vukelic (appeared), Bismarck, N.D., for respondent and appellant.

Ken R. Sorenson (on brief), Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for amicus curiae State of North Dakota.

SANDSTROM, Justice.

[¶ 1] B.T., the father of L.T., appeals the juvenile court's order adopting the judicial referee's findings of fact and order committing L.T. to the care of the Division of Juvenile Services following his admissions to gross sexual imposition and ingestion of a controlled substance. We affirm, concluding that the right-to-counsel statute in North Dakota's Uniform Juvenile Court Act protects the constitutional rights of parents and juveniles and that the judicial referee did not err when he did not notify B.T. of the collateral consequences of L.T.'s admissions.

I

[¶ 2] L.T. was taken into juvenile detention in February 2010 and was accused of committing the delinquent acts of gross sexual imposition and ingestion of a controlled substance. During his initial appearance, L.T. appeared with court-appointed counsel, but his parents were not separately represented. H.T., L.T.'s mother, expressed some confusion about the proceedings, but ultimately requested that L.T. be returned home from detention. The judicial referee granted this request, placing L.T. under house arrest pending adjudication of his delinquency charges.

[¶ 3] L.T. was again represented by court-appointed counsel at his pretrial conference, but his parents did not have separate representation. During this hearing, L.T. admitted to the charges in the State's petition following an amendment. This amendment reduced the felony level of the gross sexual imposition charge against L.T., allowing him to avoid proceedings in adult court. The referee ordered disposition at a later date, and directed L.T. to

undergo a psychological and sexual behavior evaluation for purposes of potential registration as a sexual offender. The referee also informed L.T.'s parents they could apply for individual court-appointed counsel for the dispositional hearing as authorized by N.D.C.C. § 27–20–26(1).

[¶ 4] At the dispositional hearing, L.T., B.T., and H.T. were all represented by separate court-appointed counsel. There was much debate over mandatory registration of L.T. as a sexual offender, but the judicial referee concluded L.T. would be required to register under N.D.C.C. § 12.1–32–15(2). As a result of his admissions and other recent behavior, L.T. was committed to the care of the Division of Juvenile Services.

[¶ 5] Neither L.T. nor H.T. appealed the judicial referee's order committing L.T. to the Division of Juvenile Services and mandating his registration as a sexual offender. B.T. appealed, however, requesting the juvenile court to review the judicial referee's order. B.T. argued the referee erred by not adequately advising B.T. that L.T. would be required to register as a sexual offender after admitting to the State's charges. Further, B.T. contended it was unconstitutional for an indigent parent to be denied court-appointed counsel under N.D.C.C. § 27–20–26(1) during the adjudicative phase of a juvenile delinquency proceeding. The juvenile court rejected B.T.'s arguments and adopted the judicial referee's findings and order.

[¶ 6] On appeal, B.T. argues N.D.C.C. § 27–20–26(1) is unconstitutional because it does not provide indigent parents with court-appointed counsel during the adjudicative phase of a juvenile delinquency proceeding. B.T. also contends the judicial referee erred by failing to advise him that mandatory registration as a sexual offend-

er was a consequence of L.T's admission to the State's charges.

[¶ 7] The juvenile court had jurisdiction under N.D.C.C. § 27–20–03(1)(a). The district court judge had jurisdiction under N.D. Sup.Ct. Admin. R. 13(11) to review the referee's findings and order. The notice of appeal was timely under N.D.C.C. § 27–20–56(1). This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 27–20–56(1).

II

[¶ 8] B.T. argues N.D.C.C. § 27–20–26(1) is unconstitutional because it does not provide indigent parents with court-appointed counsel during the adjudicative phase of a juvenile delinquency proceeding. B.T. contends this infringes on his right to parent his child and creates an impermissible double standard because non-indigent parents can retain counsel during this phase at their own expense. Alleged violations of a constitutional right are reviewed de novo. *State v. Sorenson,* 2009 ND 147, ¶ 16, 770 N.W.2d 701.

[¶ 9] The provisions of the statute were changed by the 2007 Legislative Assembly:
[N.D.C.C. § ]27–20–26. Right to counsel *Exceptions.*

1. Except as otherwise provided under *in* this chapter *section,* a party *who is indigent and unable to employ legal counsel* is entitled to representation by legal counsel *at public expense* at custodial, post-petition, and informal adjustment stages of proceedings under this chapter and, if as a needy person the party is unable to employ counsel, to have the court provide counsel for the party. *During the informal adjustment stage of a proceeding only the child, if determined to be indigent, is entitled to counsel at public expense. In proceedings regarding allega-*

*tions of unruliness or delinquency, a child's parent, legal guardian, or custodian, if determined to be indigent, is entitled to counsel at public expense only during the disposition-al stage of the proceedings.* If a party appears without counsel the court shall ascertain whether the party knows ~~of the party's right to~~ *the party may be represented by* counsel and ~~to be provided with~~ *that the party is entitled to* counsel ~~by the court if the party is a needy person~~ *at public expense if indigent.* The court may continue the proceeding to enable a party to obtain counsel and ~~shall provide~~, *subject to this section,* counsel *must be provided* for an unrepresented ~~needy person~~ *indigent party* upon the ~~person's~~ *party's* request. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian at custodial, post-petition, and informal adjustment stages of proceedings under this chapter. If the interests of two or more parties conflict, separate counsel must be provided for each of them.

2007 N.D. Sess. Laws ch. 274, § 14.

The effect of the amendments to N.D.C.C. § 27–20–26(1) is clear and unambiguous. Any personal right of a parent to court-appointed counsel during informal adjustments and the adjudication phase of a delinquency proceeding has been removed.

[¶ 10] The question we are confronted with is whether the restriction on court-appointed counsel for indigent parents in certain juvenile proceedings violates B.T.'s right to equal protection under the federal and state constitutions, considering that non-indigent parents may secure counsel at their own expense during all juvenile proceedings. While B.T. has framed the issue as a violation of his right to equal protection under the federal and state constitutions, he also appears to argue his rights to due process have been violated. B.T. contends that the right to court-appointed counsel is part of his constitutional right to parent his child. If true, then the Legislature's amendments to N.D.C.C. § 27–20–26 restricted a fundamental right, and we will review the State action under the strict scrutiny standard of review. *See Kavadas v. Lorenzen,* 448 N.W.2d 219, 221 (N.D.1989). If B.T.'s rights to due process do not encompass this right to counsel, then we will review his equal protection claim under the rational basis standard of review. *Id.* at 221–22.

[¶ 11] B.T. argues his constitutional right to parent his child includes the right to court-appointed counsel during the adjudication phase of his child's delinquency proceeding. In making this argument, he places great reliance on *Adoption of K.A.S.,* 499 N.W.2d 558 (N.D.1993), which was a termination-of-parental-rights case. In that case, the appellant father was denied court-appointed counsel under one statute at trial, but would have been afforded counsel if the case had instead proceeded under one of two other functionally identical statutes. *Id.* at 560. *K.A.S.* stated, "[P]arents have a fundamental constitutional right to parent their children which is of the highest order," and applied strict scrutiny review, concluding the father's rights were violated and he should have been appointed counsel. *Id.* at 564, 567–68. B.T. argues he was similarly denied the ability to exercise his constitutional right to parent L.T. because he lacked legal representation during all phases of L.T.'s delinquency proceedings.

[¶ 12] In evaluating B.T.'s claim, we recognize the stark contrast between the rights that were infringed in *K.A.S.* and the rights that were purportedly infringed in this case. Termination of parental

rights is the most extreme civil remedy that the State can seek in the family setting. In a termination-of-parental-rights proceeding, the State seeks to permanently sever all legal ties that a parent has to his or her child. This is a direct challenge to a parent's constitutional right to parent his or her child. *See Interest of L.J.*, 436 N.W.2d 558, 561 (N.D.1989). The parent is stripped of legal rights to primary residential responsibility and parenting time, and also loses the right to make decisions regarding the upbringing and well-being of his or her child. N.D.C.C. § 27–20–46.

[¶ 13] The gravity of a termination-of-parental-rights proceeding surpasses what B.T. is facing in this case. B.T. is not losing the responsibility and right to care for his child. On the contrary, his guidance as a parent is going to be even more important for L.T. following this incident. The ancillary personal harm that B.T. fears following L.T.'s admissions, such as community stigma and a hindrance to his business, does not alter his fundamental right to parent L.T. as found in *K.A.S.* The father in *K.A.S.* was entitled to court-appointed counsel because his parental rights were in immediate danger of being severed. L.T.'s delinquency proceeding posed no comparable threat to B.T.'s parental rights.

[¶ 14] Without an allegation of deprivation, B.T. is unable to demonstrate that personal representation during the adjudication phase of a delinquency proceeding is a fundamental parenting right. Significantly, only B.T., and not L.T., has appealed the disposition of this case. In exchange for his admissions, L.T. received a concession from the State that was undoubtedly of great value to him—the avoidance of charges in adult court. If we were to grant the relief B.T. seeks in this matter—that the case be reversed because he was not provided counsel—L.T.'s admissions would be voided and the proceedings would begin anew. L.T. would be faced with the unjust prospect of having an agreement with the State that he found favorable rescinded on the basis of his father's competing interests.

[¶ 15] The Iowa Supreme Court was confronted with a similar problem of the competing interests of parents and a juvenile during a non-deprivation delinquency proceeding in *Interest of A.H.*, 549 N.W.2d 824 (Iowa 1996). The Iowa Code had previously granted parents the right to personal counsel in juvenile delinquency proceedings, including court-appointed counsel if the parent was indigent. Iowa Code § 232.28 (1977); *see A.H.*, at 826. Just as the Legislature amended the statute at issue here, the Iowa Legislature subsequently modified its juvenile justice laws and, in doing so, removed the right to personal counsel for parents in juvenile delinquency proceedings. *A.H.*, at 826; *see* Iowa Code § 232.11(4) (1979) (identical language in 2011 version). During his delinquency proceeding, the juvenile, A.H., and his counsel agreed with the State's recommendation regarding a proposed treatment program. *A.H.*, at 825. The juvenile's parents resisted this recommendation, however, and attempted to introduce evidence through their privately retained counsel to contest placement in the treatment program. *Id.* The Iowa Supreme Court upheld the Iowa statute and denied the parents the ability to independently participate during the delinquency proceeding because of the competing interests of the parties:

The State argues persuasively that this distinction drawn by the legislature between delinquency and other juvenile proceedings fosters a fairer balance of power between the State and the juvenile where, as here, the juvenile's liberty is at stake. Parents customarily exer-

cise control over a child, creating the potential for disagreement between them when a delinquent act is charged. The nature of the relationship could also pose a threat to the child's fundamental rights against self-incrimination and unreasonable searches. A parent with the right to produce evidence and cross-examine witnesses could become the child's additional, potentially formidable, opponent.

*Id.* at 827. Other jurisdictions have also denied parents the ability to independently participate in delinquency proceedings, holding that they have few rights in such proceedings beyond notice. *See, e.g., People ex rel. J.P.L.,* 214 P.3d 1072, 1077 (Colo.App.2009) (Parents do not have a due process right to participate in child's adjudicative proceedings even when named parties to proceedings.); *State v. Kirk N.,* 214 W.Va. 730, 737, 591 S.E.2d 288, 295 (2003) (Parents may help the child understand the nature of the adjudicative proceedings and protect the child from inaccuracies but may not participate as full and independent parties to the proceedings.). These jurisdictions have concluded that a full denial of participation by parents in a delinquency proceeding does not infringe on those parents' constitutional rights. Parents in North Dakota are not denied the right to participate, but only have restrictions on court-appointed counsel in certain phases of a delinquency proceeding. This less stringent restriction is not an impermissible violation of parents' constitutional rights.

[¶ 16] In this case, the judicial referee took care to ensure that L.T. was knowingly and voluntarily admitting to the State's charges. L.T. made his admissions in exchange for the tangible benefit of avoiding charges in adult court. Had B.T. been entitled to personal court-appointed counsel during this phase of the juvenile proceeding, it appears certain that he would have contested L.T.'s decision. This is evident from B.T.'s current attempt to have L.T.'s admissions rescinded and the proceedings restarted from the beginning. This parental intervention, at odds with L.T.'s voluntary choice made with the assistance of counsel, is exactly the "formidable opponent" that concerned the Iowa Supreme Court.

[¶ 17] We hold that the amendments to N.D.C.C. § 27–20–26(1) restricting the right to court-appointed counsel did not infringe on parents' fundamental parenting rights. The statute also does not infringe on any recognized "important substantive rights," nor does it concern a suspect classification. While B.T. argues that under the statute indigent parents are unfairly discriminated against when compared to non-indigent parents, the United States Supreme Court has held that wealth discrimination alone cannot form the basis for a suspect classification necessitating strict scrutiny review. *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 28–29, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). Similarly, there are no independent grounds in the North Dakota Constitution for B.T. to succeed in this argument.

[¶ 18] Accordingly, rational basis review is appropriate in considering B.T.'s equal protection claim. "When no suspect class, fundamental right, or important substantive right is involved, we apply a rational basis standard and sustain the legislative classification unless it is patently arbitrary and bears no rational relationship to a legitimate governmental purpose." *Gange v. Clerk of Burleigh County Dist. Court,* 429 N.W.2d 429, 433 (N.D. 1988). The restrictions on the right to counsel under N.D.C.C. § 27–20–26(1) reflect a recognition of the real parties in interest during certain types and stages of juvenile proceedings. As illustrated by

this case, the parents' interests may in fact be at odds with those of the juvenile, the party for whose treatment, rehabilitation, and welfare the delinquency process exists. *See* N.D.C.C. § 27–20–31. By recognizing which parties have a direct interest in the proceedings, the restrictions on parents' right to counsel made in the 2007 amendments to N.D.C.C. § 27–20–26(1) safeguard the juvenile's rights while minimizing parental conflict with the proceedings between the juvenile and the juvenile court.

[¶ 19] The amendments to N.D.C.C. § 27–20–26(1) were not patently arbitrary. On the contrary, they were calculated to protect the rights of juveniles in the delinquency process. This action was rationally related to a legitimate government purpose, and we hold that there is no equal protection violation.

### III

[¶ 20] B.T. argues that the judicial referee erred by not informing him that registration as a sexual offender was a mandatory consequence of L.T.'s admissions during the adjudication phase of the delinquency proceeding.

[¶ 21] A defendant must be informed of all direct consequences of a guilty plea, but he need not be advised of collateral consequences. *Davenport v. State*, 2000 ND 218, ¶ 10, 620 N.W.2d 164. We have previously held that registration as a sexual offender is a collateral consequence of a guilty plea: "The purpose of the registration requirement is protection of a legitimate public interest, which imposes a collateral consequence upon conviction, not added punishment." *State v. Burr*, 1999 ND 143, ¶ 36, 598 N.W.2d 147. Accordingly, the judicial referee was not required to inform L.T. of the registration requirement. If the defendant himself is not required to be advised of the collateral

consequences of an admission, then no such requirement exists for a parent of the defendant. L.T. himself does not claim he was prejudiced by the referee's initial confusion as to the registration requirement, and B.T. likewise cannot make out a credible claim on this issue.

[¶ 22] The juvenile court did not err when it did not inform B.T. of the registration requirement during the adjudication stage of L.T.'s delinquency proceeding.

### IV

[¶ 23] Delinquency proceedings are conducted for the benefit of the juvenile. *See* N.D.C.C. § 27–20–31. The Legislature's amendments to N.D.C.C. § 27–20–26(1) properly safeguard the rights of the juvenile against competing parental interests while simultaneously protecting the rights of parents when they have an independent interest in the proceedings. Additionally, the judicial referee acted properly in this case, and we affirm the juvenile court order adopting the judicial referee's findings of fact and order committing L.T. to the care of the Division of Juvenile Services.

[¶ 24] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.